IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Strategic Diversity, Inc., a Massachusetts corporation; and Kenneth P. Weiss, an unmarried man,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>Alchemix Corporation, an Arizona corporation; Robert R. Horton and Cheryl Halota Horton, husband and wife; Medici Associates, LLC, a Delaware limited liability company,<br><br>　　　　　　Defendants. | No. CV-07-929-PHX-GMS<br><br>**ORDER** |

Pending before the Court are Defendants' Motion for Summary Judgment or Partial Summary Judgment in the Alternative (Dkt. # 120) and Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 128). For the following reasons, Defendants' Motion is granted and Plaintiffs' Motion is denied as moot.

**BACKGROUND**

**I.　The Loan**

On July 2, 2001, Kenneth P. Weiss ("Weiss") agreed that his company, Strategic Diversity, Inc. ("Strategic Diversity"), would loan $500,000 to Alchemix Corporation ("Alchemix"), an alternative fuels start-up company. The Loan was consummated by a Convertible Promissory Note (the "Note" or "Loan"), payable after five years at ten-percent

interest, or convertible to stock at a price of $2.00 per share. (Dkt. # 127, Ex. 1.) To secure the Loan, Strategic Diversity was given a lien against Alchemix's patents and Weiss was given a seat on the Alchemix Board of Directors until the Loan was repaid. (Dkt. ## 54 at ¶ 14, 127, Ex. 18 at 90; 129 Ex B at ALCHX 00156 ¶ 4.) As the Amended Complaint specifically provides, "Weiss was . . . appointed as a Member of the Board of Directors of Alchemix until such time as the loan had been fully repaid." (Dkt # 53 at ¶ 14.) *See Bellefonte Re-Ins. Co. v. Argonaut Ins.* Co., 757 F.2d 523, 528–29 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding); *see also Nat. Coal. Gov. of Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329 (C.D. Cal. 1997) ([P]laintiffs are bound by all factual assertions in the complaint because such assertions constitute judicial admissions."). Weiss's deposition testimony also indicates that his right to have a seat on the Board would end when the Loan was repaid. (Dkt. # 127, Ex. 18 at 90.) The agreements giving rise to these rights further provide that Strategic Diversity's lien on Alchemix patents and Weiss right to a seat on the Alchemix Board only continued "until the Note [h]as been satisfied or converted" into stock. (Dkt. ## 127, Ex. 2; 129, Ex B at ALCHX 00156 ¶ 4.) *See Invitrogen Corp. v. Employers Ins. Co. of Wausau*, 2007 WL 841413 at * 6 (D. Ariz. Mar. 15, 2007) (holding that a written agreement can be interpreted as a matter of law when its meaning is plain on its face) (citing *Long v. City of Glendale*, 208 Ariz. 319, 328, 93 P.3d 519, 528 (Ct. App. 2004)).

In addition to these rights afforded to the Plaintiffs, the Loan also gave Alchemix the right to prepay its debt anytime after one-year. There were only three conditions on Alchemix's right to prepayment: (1) Alchemix had to give Strategic Diversity thirty-days advanced written notice before paying off the Loan; (2) Alchemix had to pay a $10,000 prepayment penalty; and (3) during the thirty-day notice period, Alchemix had to give Strategic Diversity the option to convert the Loan into 250,000 shares of Alchemix stock at the lower of $2.00 per share or such price offered to other investors. (Dkt. # 127, Ex. 1 at 2–3.) Around the time that the Loan was finalized, Alchemix also gave Strategic Diversity a Stock Purchase Warrant, whereby Alchemix was required to get Strategic Diversity's

consent before increasing the number of capitalized shares beyond 40,000,000, since increasing the number of shares might otherwise dilute the value of Weiss's investment. (*See* Dkt. # 129, Ex. B at ACLHX00165 ¶ 4c.)

## II. Alchemix Funding Group

To raise additional capital for its operations, Alchemix sought other investments beyond the Loan from Strategic Diversity. (*See* Dkt. # 127 at Ex. 7.) In June 2002, Alchemix entered into negotiations with an investment consortium known as Alchemix Funding Group ("AFG"). (*Id.*) Though Weiss never participated in AFG's negotiations with Alchemix, he later joined the group and offered to loan $500,000 to Alchemix on the same terms and conditions as the other members of AFG. (*See* Dkt. # 135 at 4.) As part of this agreement, Weiss indicated that he would waive his non-dilution rights and share his security interest with the other members of the investment consortium. (*See* Dkt. # 141 at ¶ 17.)[1] The agreement with AFG, however, never materialized. On June 18, 2002, Alchemix's founder and CEO, Robert R. Horton, ("Horton") canceled the AFG proposal in favor of another investment proposal received from Western Oil Sands ("Western"). (Dkt. # 141 ¶ 18.)

After the investment with AFG fell through, Alchemix's executive vice president suggested that Horton offer Alchemix shares, then held by Medici Associates LLC ("Medici"), to AFG members in recognition of the consortium's efforts to raise funds. (Dkt. # 141 ¶ 21.) After the suggestion was met with approval, members of AFG were given the opportunity to purchase Alchemix shares for $1.00 per share. (Dkt. # 141 ¶¶ 25–26.) According to Defendants, Horton offered Strategic Diversity the right to purchase up to 390,000 shares of stock held by Medici based on Weiss' participation in AFG. Plaintiffs, however, assert that Horton offered the 390,000 shares as a "sweetener" to induce Weiss and

---

[1]Though Plaintiffs object to ¶ 17 of Defendants' Statement of Facts on other grounds, they do not object to the fact that Weiss would have waived his non-dilution rights and shared his security interest in Alchemix's patents if the agreement with AFG had gone forward.

Strategic Diversity to give up certain rights under the Loan. Regardless, Weiss, not Strategic Diversity, ultimately purchased 250,000 shares of Alchemix stock from Medici.[2] (*See id.*)

**III.     Western's Investment and Horton's Alleged Misstatements**

Around this same time, Alchemix and Western went forward with their investment. The terms of the investment provided that Western would have the option to purchase up to $36,000,000 in Alchemix shares. (Dkt. # 127, Ex. 9.) The investment, however, would also potentially increase the number of outstanding Alchemix shares beyond the 40,000,000 permitted by Weiss's Stock Purchase Warrant. Accordingly, Horton and Alchemix sought Strategic Diversity's consent to waive its anti-dilution rights.[3] (*See* Dkt. # 129, Ex. C; 129 at ¶ 7.) In pursuing Strategic Diversity's consent, Horton also sought both to repay the Loan and to obtain additional concessions of Plaintiffs' rights under the Loan. Plaintiffs assert that Alchemix wanted them to waive the Loan's prepayment restrictions, prepayment penalties, and Strategic Diversity's right to make additional advances to Alchemix. (Dkt. # 141 at ¶ 9.) In seeking these concessions, Horton allegedly told Weiss that Western was going to invest $36,000,000 and that Western would only go through with its investment if Weiss resigned from his seat on the Board of Directors and released Strategic Diversity's security interest in Alchemix's patents. (*Id.*)

The agreement between Western and Alchemix, however, did not require any investment beyond the initial $3,000,000. (Dkt. # 127, Ex. 9.) According to the Memorandum of Understanding (the "Memorandum") between Western and Alchemix, Western merely had the *option* to invest an additional $33,000,000. (*Id.*) The Memorandum further did not indicate that Western required Weiss to make any of the alleged concessions.

---

[2]Throughout the briefing both parties refer to Strategic Diversity and Weiss interchangeably. Nevertheless, while it is unclear from the parties' briefing whether Weiss or Strategic Diversity purchased the 250,000 shares, the parties stipulated at oral argument that Weiss purchased the shares rather than Strategic Diversity.

[3]Weiss and Strategic Diversity do not assert that they were damaged by giving up their anti-dilution rights. (*see* Dkt. # 128 at 3, n. 2.) Instead, they specifically note that "the claims in the instant litigation do not involve the Stock [Purchase] Warrant . . . ." (*Id.*)

(*Id.*) After these terms were decided upon, Horton faxed the entire Memorandum to the Alchemix Board. Weiss received the Memorandum on June 18, 2002. (Dkt. # 129 at ¶ 6.) And, contrary to Plaintiffs' assertion that the terms of the Memorandum are irrelevant, the Memorandum's terms are relevant to the extent they indicate when Plaintiffs received notice of Horton's alleged misstatements.

**IV.     Repayment of the Loan & Stock Purchase**

On July 2, 2001, exactly one year after the origination of the Loan, Alchemix paid Weiss $560,832—the amount due under the Loan, including principal, interest, and the prepayment penalty. (Dkt. # 141 at ¶ 9.) While Plaintiffs assert that the Loan was not repaid in full and that the $10,000 penalty was never paid, this assertion is not supported by the allegations in the Amended Complaint and the record. The Amended Complaint provides that "on or about July 2, 2002, Alchemix caused payment to be made to [Strategic Diversity] in the amount of $560,832 in payment of the amount of principal and interest then due under the terms of the . . . Note." (Dkt. # 54 at ¶ 21.) Plaintiffs' own documentation further provides that the prepayment penalty was also paid. (*See* Dkt. # 136, Ex. K at 2–3.) Just four days before Alchemix repaid the Loan, Weiss sent Alchemix a letter specifying that the amount due included $10,000 above the loan balance due. (*Id.*) Plaintiffs include no admissible facts calling full repayment into question.

Next, Weiss purchased 250,000 shares of Alchemix stock. These were the shares, held by Medici, which Horton apparently offered to members of AFG. (Dkt. # 129 at ¶ 6.) And, although Plaintiffs allege that the stock purchase was part of a two-pronged, but single "debt-equity swap," the undisputed facts provide that repayment of the Loan to Strategic Diversity was separate from Weiss's purchase of the 250,000 shares. Here, Strategic Diversity could not have entered into a "debt-equity swap" as Weiss obtained the equity rather than Strategic Diversity and Strategic Diversity made the Loan rather than Weiss. Accordingly, Weiss's purchase of the 250,000 shares must have been separate from Strategic Diversity's accepting repayment of the Note. Regardless, after Alchemix repaid the Loan and Weiss purchased the stock, Weiss tendered his resignation from the Alchemix Board and released Strategic

Diversity's security interest in Alchemix's patents—all of which were required when the Loan was repaid.

Around this time, Western sent representatives to Arizona to interview Alchemix's personnel and review its operations. (Dkt. # 129 at ¶ 14.) Shortly thereafter, Western elected not to exercise its option to further invest in Alchemix. (*Id.*) Strapped for cash, Alchemix dissolved its Board of Directors in 2003. (*See* Dkt. # 129 at ¶ 16.) Plaintiffs, however, claim that they did not learn that Western chose not to go forward with additional investment until December 2006. (*Id.*)

## V.     **The Glenn Action**

Throughout the preceding events, Horton was an individual defendant in a securities fraud action then-pending in the Maricopa County Superior Court, entitled *Glenn v. Horton* (the "Glenn Action"). (Dkt. # 141 at ¶ 49.) The Glenn Action alleged fraud, securities fraud, and other claims related to Horton's involvement with another company. (*Id.*) The Glenn Action and the current case are largely unrelated, but both Plaintiffs here and the plaintiffs in the Glenn Action were represented by the same legal counsel, James O. Ehinger of the Jennings Strouss & Salmon law firm. (*Id.*) And, although Plaintiffs allege that the two actions involve similar allegations and investment schemes, Plaintiffs provide no independent facts to support these allegations. (Dkt. # 141 at ¶ 49.) *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (holding that the Court need not "scour the record in search of a genuine issue of triable fact[;]" instead the Court relies on "the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment") (internal quotations omitted).

Throughout the aforementioned transactions, Horton never disclosed to Weiss or Western that he was being sued for securities fraud. Hence, Weiss asserts that he never would have agreed to the July 2002 stock purchase had he known that Horton was involved in the Glenn Action. (Dkt. # 129 at ¶ 19).

## VI.    **The Allegations & Motions for Summary Judgment**

On May 7, 2007, Strategic Diversity and Weiss (collectively "Plaintiffs") brought suit against Alchemix, Horton, his wife Cheryl Horton, and Medici (collectively "Defendants").

(Dkt. # 1.) In their Amended Complaint, Plaintiffs bring forth two distinct types of claims arising out of the July, 2002 transactions: (1) fraud-based claims under both federal and state law and (2) restitutionary claims arising in equity. (Dkt. # 54.) Plaintiffs' fraud-based claims consist of federal securities fraud, state securities fraud under Arizona law, common law fraud, and negligent misrepresentation (Counts 1, 2, 3, and 5 of the Amended Complaint). (*Id.*) The restitutionary claims include mistake, failure of a condition precedent, and equitable restitution (Counts 6, 7, and 8 of the Amended Complaint).[4] (*Id.*)

These claims are all premised on Horton's alleged misrepresentations and omissions, which Plaintiffs claim induced them to accept repayment of the Loan and purchase $250,000 worth of Alchemix stock. Horton's alleged misstatements include: (1) Western would "invest . . . [$36,000,000] into Alchemix;" (2) Western required the release of [Strategic Diversity's] security interest in the Alchemix patents as a condition to making those investments;" (3) Western "required Weiss to resign from his seat on the Board of Directors as a condition to making that investment;" (4) Western's " investment would make the stock that Weiss was being offered in Alchemix significantly more valuable than [Strategic Diversity's] secured loan;" (5) "the $1.00/share price at which the Alchemix stock was being offered to Weiss represented a fifty (50%) discount from the stock's then-current $2.00/share 'market value;'" and (6) "Horton's failure to disclose [the Glenn Action]." (Dkt. # 54 at ¶ 30.) On July 31, 2009, the parties brought competing Motions for Summary Judgment with respect to Plaintiffs' claims for relief and Defendants' affirmative defenses. (Dkt. ## 120, 128.)

## LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the

---

[4] The Court dismissed Count 4 of the Amended Complaint (statutory fraud) in an Order filed on March 31, 2008. (Dkt. # 29.)

- 7 -

1  outcome of the suit under the governing law will properly preclude the entry of summary
2  judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger v. Nev.*
3  *Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). In addition, the dispute must be
4  genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for
5  the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the moving party need not disprove matters on which the opponent has the burden of proof at trial. *Id.* at 323. Then, the burden is on the nonmoving party to establish a genuine issue of material fact. *Id.* at 322–23. The nonmoving party "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

**DISCUSSION**

Summary judgement is appropriate with respect to Plaintiffs' fraud-based claims -- either because the claims are barred by the statute of limitations or because Plaintiffs fail to show cognizable damages. Similarly, Plaintiffs' equitable claims are either not cognizable or fail as a matter of law.

**I.     Plaintiffs' Fraud-Based Claims**

Plaintiffs' fraud-based claims are premised on Horton's alleged misrepresentations and omissions, which they claim induced them to accept repayment of the Loan and purchase $250,000 worth of Alchemix stock. Here, the statute of limitations bars Plaintiffs federal and state securities claims to the extent that those claims are based on Horton's alleged misrepresentations about Western's investment. To the extent that Plaintiffs' fraud based claims are not barred by the statute of limitations, these claims fail because Plaintiffs have not provided any evidence of damages.

**A.     Plaintiffs' Federal Securities Claim & Statute of Limitations**

Plaintiffs' first cause of action is for federal securities fraud under Section 10(b) of the Securities and Exchange Act of 1934. *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(b) (1998). SEC Rule 10b-5, promulgated under the authority of the Exchange Act, provides:

> It shall be unlawful for any person . . . (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

To establish a valid claim under Rule 10b-5, Plaintiffs must satisfy five elements: "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Sys. Inc., Sec. Litig.*, 411 F.3d 1006, 1014 (9th Cir. 2005) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005)). "[E]xpressions of intent[] or statements concerning future events," however, do not constitute actionable fraud "unless such were made with the present intention not to perform." *See Arnold & Assoc. v. Misys Healthcare Sys.*, 275 F. Supp.2d 1013, 1027 (D. Ariz. 2003) (internal citations omitted).

Claims asserted under Section 10(b) must also be brought within the earlier of two years after "discovery of the facts constituting the violation" or five years after the violation occurs. 28 U.S.C. § 1658. "[E]ither actual or inquiry notice can start the running of the statute of limitations on a federal securities fraud claim." *Betz v. Trainer Wortham & Co.*, 519 F.3d 863, 874 (9th Cir. 2008). With respect to inquiry notice, the Ninth Circuit has adopted the "inquiry-plus-reasonable-diligence standard." *Id.* at 877. Under this test, a defendant must demonstrate that "there exists sufficient suspicion of fraud to cause a reasonable investor to investigate the matter further." *Id* at 876. The facts constituting inquiry notice "must be sufficiently probative of fraud—sufficiently advanced beyond the stage of a mere suspicion . . . to incite the victim to investigate." *Id.* at 876 (quoting *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1335 (7th Cir. 1997)). Once the Court determines that an investor has inquiry

notice, the second part of the test asks when, "in the exercise of reasonable diligence," should the investor have "discovered the facts constituting the alleged fraud." *Id.* The answer to this question "tells [the Court] when the statute of limitations began to run." *Id.*

District courts, however, are to exercise caution before determining that a securities claim is barred as a matter of law. In *Betz*, the Ninth Circuit noted that "the defendant bears a considerable burden in demonstrating, at the summary judgment stage, that the plaintiff's claim is time barred." *Id.* at 877 (citing *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1310 (9th Cir. 1982)). A defendant's burden is particularly difficult when the plaintiff alleges that a defendant made additional misstatements or false assurances that impeded the plaintiff's ability to discover the fraud. *Id.* Yet, contrary to Plaintiffs' assertion that "inquiry notice" is always a question for the fact-finder, summary judgment is appropriate when the "uncontroverted evidence irrefutably demonstrates that a plaintiff discovered or should have discovered the fraudulent conduct." *Id.* (citing *Gray v. First Winthrop Corp.*, 82 F.3d 877, 881 (9th Cir. 1996)). The court in *Betz* endorsed two Ninth Circuit cases that "resolved by summary judgment the question of whether a securities plaintiff had sufficient notice of alleged fraud to trigger the statute of limitations." *See id.* at 878 n. 4. In one of these cases, *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1412 (9th Cir. 1987), the Ninth Circuit granted summary judgment where the undisputed facts demonstrated that the defendant had sent plaintiffs correspondence containing information that contradicted the defendant's previous misstatements. *See also In re Am. Funds Sec. Litig.*, 556 F. Supp.2d 1100 (C.D. Cal. 2008).

With respect to the alleged misrepresentations about the Western investment, Defendants meet the "considerable burden" of demonstrating that the statute of limitations began to run more than two years before Plaintiffs filed their claim. Here the undisputed facts indicate that Horton's alleged misstatements about Western's Investment occurred prior to June 5, 2002, when Weiss sent Alchemix a letter indicating his willingness to waive Plaintiffs' rights under the Loan. (Dkt. # 135, Ex. G at SDI000071.) It is further undisputed that Weiss received the Memorandum that provided the terms of Western's investment on June 18, 2002. (Dkt. # 141 at ¶ 41.) Like the correspondence in *Volk*, the Memorandum

contradicted Defendants' alleged misstatements. *See* 816 F.3d at 1412. Where Plaintiffs claim that Horton told them that Western would invest thirty-six million dollars, the Memorandum made clear that any investment beyond three million dollars was optional. (Dkt. # 127, Ex. 9.) In addition, whereas Plaintiffs argue that Horton told them Western required a release of Plaintiffs' security interest and Weiss's seat on the Board, the Memorandum was silent as to their alleged requirements. (Dkt. #141 at ¶ 41.) Based on the contents of the Memorandum, Plaintiffs also had reason to question the accuracy of Horton's alleged statements about the value of Alchemix stock, at least as far as the value was tied to the amount of the investment that Western was supposedly obliged to make to Alchemix. In addition, Plaintiffs do not allege or provide any evidence to suggest that the Memorandum failed to incorporate the complete agreement between Western and Alchemix. Hence, the Memorandum created "sufficient suspicion of fraud to cause a reasonable investor to investigate the matter further." *Betz*, 519 F.3d at 876.

Having found that Plaintiffs were on inquiry notice of the alleged wrongdoing, the Court also finds that, had they exercised reasonable diligence, they would have discovered the alleged fraud. Indeed, the "inquiry notice and reasonable diligence tests tend to merge in this case because of . . . what was . . . disclosed" by the June 2002 Memorandum. *See Am. Funds*, 556 F. Supp.2d at 1110. If Weiss had "exercise[d] reasonable diligence" and contacted either Western or Horton, he would have been able to determine whether Horton's alleged statements were actually false. Unlike the plaintiffs in *Betz*, who demonstrated that the defendant made additional misstatements or false assurances that impeded their ability to discover fraud, Plaintiffs here provide no evidence that Horton impeded any investigation. Although the Amended Complaint asserts that Horton "continued . . . to conceal the true facts" underlying his alleged misrepresentations and omissions (Dkt. # 54 at ¶ 35), Plaintiffs do not present any evidence to support this claim. In fact, the only available evidence suggests that Defendants actually alerted Weiss to the alleged fraud by sending him the Memorandum. Because Defendants meet both prongs of the *Betz* inquiry notice test, Plaintiffs claims of federal securities fraud are barred, at least to the extent that these claims

are based on Horton's alleged misrepresentations about Western's investment into Alchemix. The statute of limitations began to run on June 18, 2002; therefore, because Plaintiffs did not bring their claims until May 7, 2007, these claims are barred.

### B. Plaintiffs' State Securities Claim & Statute of Limitations

To the extent that Plaintiffs' Arizona securities claim concerns alleged misstatements about Western's investment, these claims are also barred by the statute of limitations. A person commits securities fraud under Arizona law when he or she, in connection with the a sale of securities, "make[s] any untrue statement of material fact, or omit[s] to state any material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." Ariz. Rev. Stat. § 44-1991(A)(2). The statute of limitations for this type of claim is "two years after discovery of the fraudulent practice on which the liability is based, or after the discovery should have been made by the exercise of reasonable diligence." Ariz. Rev. Stat. § 44-2004(B). As with federal securities fraud, Arizona Courts have held that summary judgment is proper when it is undisputed that a plaintiff discovered or should have "discovered . . . the misrepresentation of material facts." *See Aaron v. Fromkin*, 196 Ariz. 224, 228, 994 P.2d 1039, 1043 (Ct. App. 2000).

Plaintiffs discovered or should have discovered Horton's alleged misrepresentations and omissions more than four years before they brought suit. As previously discussed, Plaintiffs knew or should have known that Western was not required to go forward with its investment in Alchemix when they received the Memorandum in June 2002. Accordingly, these claims are barred, at least to the extent that they are based on Horton's alleged misstatements about Western's investment.[5]

### C. Plaintiffs Fraud Based Claims Only Survive Summary Judgment to the Extent that Plaintiffs Can Demonstrate an Injury or Damages.

---

[5]To the extent that Plaintiffs' federal and state securities claims are based on Horton's alleged failure to disclose that he was a Defendant in the Glenn Action, the Court need not decide whether these claims are barred by the statute of limitations because the Court grants summary judgment on these claims due to Plaintiffs' failure to provide evidence of any injury or damages suffered as a result of this alleged omission.

- 12 -

To the extent that Plaintiffs' fraud-based claims are not barred by the statute of limitations, Plaintiffs' claims fail because Plaintiffs have not alleged any facts demonstrating that they were somehow injured by accepting repayment of the Loan and purchasing Alchemix stock. Each of Plaintiffs fraud-based claims, require that a plaintiff demonstrate economic loss, or some other injury. *See In re Daou Sys. Inc., Sec. Litig.*, 411 F.3d at 1014 (citing *Dura Pharms.,* 544 U.S. at 336) (noting that a plaintiff must prove economic loss to prevail on a federal securities claim) *Grand v. Nacchio* 222 Ariz. 498, 500, 217 P.3d 1203 (Ct. App. 2009) (observing that Arizona securities law requires an injury before a litigant can bring a private cause of action for rescission or monetary damages); *Staheli v. Kauffman*, 122 Ariz. 380, 383, 595 P.2d 172, 175 (1979) (holding that plaintiff bears burden of showing an injury or damages to prevail under a theory of common-law fraud); *St. Joseph's Hops. and Med. Ctr. v, Reserve Life Ins. Co.*, 154 Ariz. 307, 312, 742 P.2d 808, 813 (1987) (recognizing damages as an element of an Arizona negligent misrepresentation claim).

As a preliminary matter, Plaintiffs' argument that they do not need to demonstrate that they were injured because they are seeking rescission rather than monetary damages is without merit. (*See* Dkt. # 135 at 12.) Under Arizona law, a securities claimant "may rescind the sale, despite having suffered no loss." *Grand*, 214 Ariz. at 24, 417 P.3d at 778. A plaintiff, however, must still demonstrate a cognizable injury before a court will grant rescission. *See, e.g.*, *Nacchio*, 222 Ariz. at 500, 217 P.3d at 1205 (noting that "a purchaser injured by a violation of [Arizona Securities Law] may bring a private cause of action for rescission or damages."). Moreover, the notion that Plaintiffs merely seek rescission of the stock purchase and reinstatement of the Loan, rather than monetary damages, contradicts the Amended Complaint. (*See* Dkt. # 54 at ¶¶ 37, 48, 49, 56, 72, 89, 90–93.)

Regardless, the crux of Plaintiffs' argument is that Horton's statements induced them to accept repayment of the Loan and give up certain rights to which they were otherwise entitled. The facts, however, demonstrate that Plaintiffs were not damaged or otherwise injured by Horton's alleged misstatements. It is undisputed that Defendants had the unilateral right to pay off the Loan to Strategic Diversity after one year from the time the Loan

originated. There were only three conditions on Alchemix's right to prepayment: (1) Alchemix had to give Strategic Diversity thirty-days advanced written notice before paying off the Loan; (2) Alchemix had to pay a $10,000 prepayment penalty if the Loan was repaid less than two years from the date the Loan was originated; and (3) during the thirty-day notice period, Alchemix had to give Strategic Diversity the option to convert the Loan into 250,000 shares of Alchemix stock at the lower of $2.00 per share or such price offered to other investors. (Dkt. # 127, Ex. 1 at 2–3.)

Plaintiffs realized all of the rights to which they were entitled under the prepayment provisions of the Loan. The Loan was paid on July 2, 2002, exactly one year after the Loan originated. (Dkt. # 54 at ¶ 21.) When it paid off the principal and interest due under the Loan, Alchemix also paid the $10,000 prepayment penalty. (Dkt. # 136, Ex. K at 2–3.) And, while Strategic Diversity did not exercise its right to convert the Loan into stock, Plaintiffs offer no evidence that Strategic Diversity was damaged by opting for the Loan repayment in lieu of electing the stock option. In addition, Weiss ultimately purchased 250,000 shares—the same number of shares to which Strategic Diversity was entitled under its conversion right. (Dkt. # 141 at 35.) And, while Strategic Diversity may have given up its independent right to convert the Loan into stock in lieu of receiving repayment of the Loan, Plaintiffs do not provide any evidence of how giving up this right caused some form of injury or damages. At oral argument, Plaintiffs further conceded that Strategic Diversity was not damaged by accepting repayment of the Loan. *See* Tr. of Oral Arg. 32 (Dec. 11, 2009) (conceding that "Strategic Diversity would [only] have a damage claim" if the Court determined that Plaintiffs' right to a seat on the Alchemix Board would continue after the Loan was repaid).

And, while Plaintiffs allege that they were somehow damaged or injured by giving up the right to thirty-days advanced-written notice, they do not present any evidence or explanation of these damages. Here, it is unclear what injury Plaintiffs' suffered due to waiving these rights; moreover, at oral argument, Plaintiffs conceded that Strategic Diversity was not damaged by giving up its right to advanced-written notice under the Note. *See* Tr. of Oral Arg. 32.

Plaintiffs have also failed to produce any evidence that Weiss was somehow damaged by the $1.00 purchase price. All of the evidence before the Court indicates that the stock was worth at least $1.00 per share when Weiss purchased it in 2002. As noted, Western purchased 1,500,000 shares of Alchemix stock for $ 2.00 per share just weeks before Weiss bought his shares. (Dkt. # 141 at ¶ 30; Dkt. # 127, Ex. 6 at 2.) Around the same time, members of AFG also purchased Alchemix stock from Medici for $1.00 per share.

Furthermore, Plaintiffs' allusion to statements from Horton's 2004 personal bankruptcy case is insufficient to create a material issue of fact with respect to the value of Alchemix stock in July 2002.[6] At one point during his bankruptcy case, Horton apparently asserted that Alchemix stock was basically worthless. (*See* Dkt. # 135 at 12.) Plaintiffs, however, have not provided the Court with the deposition or declaration in which Horton made this statement; therefore, the Court declines to consider it. To the extent that this assertion could be considered, it is not clear how an asserted value of Alchemix stock in 2004 is relevant to the value of Alchemix stock in 2002. Further, is unclear when Horton made this alleged statement about the value of Alchemix stock, but at the earliest, this statement occurred at the start of Horton's bankruptcy case in September of 2003. Plaintiffs fail to explain how the alleged value of Alchemix stock in September 2003 has any bearing on the value of the stock fourteen months earlier when Weiss purchased it. Moreover, the bankruptcy court rejected Horton's assertion and determined that Alchemix stock still had value. (Dkt. # 136, Ex. H at 5–6.) In finding that the stock still had value, the Horton bankruptcy court observed that several investors paid at least $1.00–$2.00 for Alchemix stock in the time period leading up to Horton's bankruptcy case. (*Id.*)

In their Responsive Memorandum, Plaintiffs assert for the first time that they were damaged because Horton induced Weiss to waive Strategic Diversity's anti-dilution rights and the right to make further advances to Alchemix. (Dkt. # 135 at 12.) Both of these rights

---

[6]Horton filed bankruptcy on September 2, 2003. (Dkt. # 136, Ex. H at ¶ 3.) The bankruptcy court issued its decision on December 14, 2004. (*Id.* at 19.)

- 15 -

are independent from the rights provided in the Loan Agreement. Because Plaintiffs' entire case is based on alleged misrepresentations that induced them to accept repayment of the Loan and give up rights arising in connection with the Loan, it is unclear how these two independent rights are relevant to their case. (*See* Dkt. # 54) Regardless, these claims are not properly before the Court because Plaintiffs never alleged in their Amended Complaint that they were injured or damaged by giving up Strategic Diversity's non-dilution rights or by relinquishing its right to make further advances to Alchemix. *See Pickern v. Pier 1 Imps. Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) (holding that rasing claims for the first time in response to a motion for summary judgment will not preclude summary judgment). In fact, Plaintiffs specifically noted in their Motion for Partial Summary Judgment that Weiss's anti-dilution rights under the Stock Purchase Warrant are not at issue in this case. (*See* Dkt. # 128 at 3, n. 2.) Because Plaintiffs fail to provide any evidence of damages or some other injury, summary judgement is appropriate with respect to Plaintiffs' fraud-based claims.

**II.     Plaintiffs' Equitable Claims**

Aside from their fraud-based claims, Plaintiffs assert that they are entitled to rescission based on three theories of restitution: (1) rescission for mutual mistake; (2) failure of a condition precedent; and (3) equitable restitution. (Dkt. # 54.) Summary Judgement is also granted with respect to each of these claims.

**A.     Rescission for Mutual Mistake**

Under Arizona law, a party may seek rescission of a contract where there has been a mistake as to the material aspects of the agreement. *Nelson v. Rice*, 198 Ariz. 563, 566, 12 P.3d 238, 241 (Ct. App. 2000). An agreement may be rescinded on the ground of a mutual mistake as to a "'basic assumption on which both parties made the contract.'" *Renner v. Kehl*, 150 Ariz. 94, 97, 722 P.2d 262, 265 (1986) (quoting Restatement (Second) of Contracts § 152 cmt. b (1979)). Arizona law has also recognized rescission with respect to unilateral mistakes. *Balmer v. Gagnon*, 19 Ariz.App. 55, 57, 504 P.2d 1278, 1280 (Ct. App. 1973). In *Balmer*, the Arizona Court of Appeals noted that a "unilateral mistake induced by misrepresentation or contract ambiguity . . . is a ground" for rescission. *Id.*

Plaintiffs allege that their decision to give up rights under the Loan and purchase Alchemix stock was predicated on four mistaken assumptions: upon the understanding (1) that Western "had agreed to invest . . . [$36,000,000] in Alchemix;" (2) that the "investment was conditioned upon [Strategic Diversity's] release of its security interest in the Alchemix patents and Weiss's resignation form the Alchemix Board of Directors;" (3) that the "stock being offered to Weiss was more valuable than [Strategic Diversity's] secured loan;" and (4) that the "stock was being offered to Weiss at a discount of one-half its fair market value." (Dkt. # 54 at ¶ 73.)

Plaintiffs' claim, however, fails because there was no mistake of fact with respect to Plaintiffs' alleged false assumptions. First, the facts demonstrate that Weiss knew or should have known that Western was not obligated to invest $36,000,000 when he agreed to purchase Alchemix stock in July 2002. (Dkt. # 141 at ¶ 41.) The facts also indicate that Plaintiffs were required to release the security interest and relinquish Weiss's seat on the Board upon repayment of the Note. (Dkt. ## 54 at ¶ 14, 127, Ex. 18 at 90.) In addition, there also is no material dispute about the value of Alchemix stock at the time Weiss purchased the 250,000 shares. Plaintiffs present no evidence to suggest that the stock was worth any less than the price Western and others paid for it. Finally, Plaintiffs conceded at oral argument that Strategic Diversity was not impacted by any alleged mistake. *See* Tr. of Oral Arg. 32. Accordingly, summary judgment is appropriate with respect to Plaintiffs' claim for mistake.

**B.     Failure of a Condition Precedent**

It is unclear whether Arizona law recognizes "failure of a condition precedent" as a separate cause of action. All of the Arizona cases cited in the briefs suggest that "failure of a condition precedent" is an affirmative defense to contract formation rather than a separate and distinct claim for relief. *See, e.g.*, *Angle v. Marco Builders*, 128 Ariz. 396, 399–400, 626 P.2d 126, 129–30 (1981). In fact, Plaintiffs cite no Arizona authority to support their claim that "failure of a condition precedent" provides an independent ground for relief.

Nevertheless, even if "failure of a condition precedent" is a separate cause of action in Arizona, Plaintiffs' claim fails as a matter of law. Here, Plaintiffs argue that their decision to give up rights under the Loan and purchase Alchemix stock was "conditioned upon the understanding that a new investor would be investing up to . . . [$36,000,000] into Alchemix" and that the investment required "the release of [Strategic Diversity's] security interest . . . and Weiss's resignation from the . . .Board . . . . " (Dkt. # 54 at ¶ 81.) Again, the facts provide that each of these alleged conditions was fulfilled. As previously discussed, Western had the option to invest up to $36,000,000 into Alchemix. Weiss was also required to release the security interest in Alchemix's patents and resign form the Board upon repayment of the Note. (Dkt. # 141 at 41). Accordingly, summary judgment is appropriate with respect to this claim for "failure of a condition precedent."

### C. Equitable Restitution/Unjust Enrichment

Plaintiffs argue that their claim for "equitable restitution" is a species of unjust enrichment. To maintain a claim for unjust enrichment under Arizona law, Plaintiffs must establish five elements: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment; and (5) an absence of a remedy provided by law." *Guardian Bank v. Hamlin*, 182 Ariz. 627, 630, 898 P.2d 1005, 1008 (1995) (citing *City of Sierra Vista v. Cochise Enter. Inc.*, 144 Ariz. 375, 381, 697 P.2d 1125, 1131 (Ct. App. 1984)).

Plaintiffs, however, fail to provide any facts that to support each of these elements. Specifically, Plaintiffs fail to show any impoverishment. As previously discussed, Plaintiffs have failed to show any injury or damages in this case. At oral argument, Plaintiffs' counsel conceded that Strategic Diversity was not unjustly impoverished by giving up its rights under the Loan. *See* Tr. of Oral Arg. 32. Plaintiffs also have not provided any facts to demonstrate that Weiss was unjustly impoverished. Here, the evidence indicates that Alchemix stock was worth at least $1.00 per share in 2002 when Weiss purchased it. Furthermore, to the extent that Weiss argues that he was unjustly impoverished because he was induced to give up

rights existing under the Loan, the facts demonstrate that the Defendants had the right to prepay the Loan and that Weiss did not lose any benefit to which he was were entitled.

### III. Defendants Other Arguments for Summary Judgment & Plaintiffs Motion for Partial Summary Judgment are Denied.

Because the Court grants Defendants' Motion for Summary Judgment, there is no need to consider Defendants' other arguments for summary judgment. Furthermore, as none of Plaintiffs claims survive summary judgment, Plaintiffs' Motion is denied as moot.

Having determined that Defendants are entitled to summary judgment, **IT IS THEREFORE ORDERED:**

(1) Defendants' Motion for Summary Judgment (Dkt. # 120) is **GRANTED**.

(2) Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 135) is **DENIED**.

(3) Defendants' requests for judicial notice (Dkt. ## 126, 145) are **DENIED**.

(4) Directing the Clerk of the Court to **TERMINATE** this action.

DATED this 4th Day of January, 2010.

_____
G. Murray Snow
United States District Judge